IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANDREA S.[1],

        Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 3:19-cv-00465-AC

OPINION AND ORDER

CAITLIN S. LAUMAKER
GEORGE J. WALL
Law Offices of George J. Wall
825 NE 20th Ave., Suite 330
Portland, OR 97232
    Of Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-2936

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

OPINION AND ORDER – 1

HEATHER L. GRIFFITH
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Of Attorneys for Defendant

ACOSTA, Magistrate Judge:

Andrea S. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is AFFIRMED.

*Procedural Background*

Plaintiff filed for DIB on July 25, 2013, alleging disability beginning August 15, 2011. (Tr. 77, 88.) Plaintiff alleged disability due to multiple sclerosis ("MS"), degenerative disc disease ("DDD"), arthritis, and anxiety. (Tr. 89.) Her application was denied initially and upon reconsideration. (Tr. 77, 88.) Plaintiff's first hearing was convened on August 15, 2015, before an Administrative Law Judge ("ALJ"); Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). (Tr. 36-65.) On September 10, 2015, ALJ Cecilia LaCara issued a decision finding Plaintiff not disabled. (Tr. 16-27.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied her request for review, filed her first complaint in the District of Oregon. (Tr. 1-3.)

Following her appeal, Plaintiff and the Acting Commissioner of Social Security agreed to a Stipulated Motion for Remand, dated November 15, 2017. (Tr. 545-46.) An Order for Remand issued on January 4, 2018. (Tr. 548, 550.) The Appeals Council, in turn, remanded the case for

further proceedings. (Tr. 551-54.) The Appeals Council directed that upon remand, the ALJ was to further evaluate Plaintiff's medically determinable impairments at step two, further consider Plaintiff's RFC, and seek supplemental evidence from a VE. (Tr. 554.) Plaintiff's second ALJ hearing was convened on November 16, 2018. (Tr. 730-53.) Plaintiff once again was represented by counsel, and she and a VE testified at the second hearing. *Id.* On December 26, 2018, ALJ John Michaelson issued a decision finding Plaintiff not disabled. (Tr. 466-76.) Plaintiff returns to this Court seeking review of the December 26, 2018 decision.

*Factual Background*

Born in 1965, Plaintiff was 47 years old on her alleged disability onset date. (Tr. 79.) Plaintiff completed high school and has previously worked as an administrative assistant and as a mortgage loan processor. (Tr. 45-55, 476, 747-49.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate

OPINION AND ORDER – 3

an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.1520. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1560(c). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

/ / / / /

OPINION AND ORDER – 4

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the initial alleged onset date of August 15, 2011, through her date last insured, December 31, 2014. (Tr. 469.)

At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine, MS, and "left shoulder symptoms consistent with left subacromial bursitis/adhesive capsulitis." *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings of presumptively disabling impairments. (Tr. 470.)

Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with the following caveats:

> [She] requires a sit/stand option allowing her to alternate sitting or standing positions at every hour for up to 5 minutes at a time, but does not need to leave the work station; she can frequently climb ladders, ropes, and scaffolds; she can frequently balance, stoop and crawl; and she must avoid concentrated exposure to extreme cold, excessive vibrations, and hazardous machinery. As a result of her left shoulder discomfort stemming from bursitis/adhesive capsulitis, the claimant would also be limited to no more than frequent reaching with her left upper extremity.

*Id.*

At step four, the ALJ determined Plaintiff could perform her past relevant work as an administrative assistant and mortgage loan processor. (Tr. 475-76.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the SSA. (Tr. 476.)

*Discussion*

Plaintiff on appeal raises a single assignment of ALJ error: that the ALJ improperly evaluated the medical opinion of her treating physician.

OPINION AND ORDER – 5

I.      <u>Medical Opinion Evidence</u>

Plaintiff argues that the ALJ failed to properly assess the medical opinion provided by her treating physician. An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

In July 2015, Plaintiff's treating physician, neurologist B. Megan Madden, M.D., provided a medical opinion in a worksheet entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." (Tr. 401-02.) Dr. Madden opined that Plaintiff was limited to carrying less than 10 pounds frequently or occasionally. (Tr. 401.) The doctor further opined Plaintiff could sit, stand, and walk less than two hours in an eight-hour workday. *Id.* Dr. Madden indicated that Plaintiff could sit, stand, and walk for 15 minutes at a time before changing position, but was limited to walking no more than 10 minutes at a time. *Id.* The doctor noted Plaintiff would have to lie down at unpredictable intervals four times throughout a workday due to "spasticity and left

sided weakness from multiple sclerosis causing pain." *Id.* The doctor opined Plaintiff could twist and stoop occasionally but was precluded from crouching and climbing stairs or ladders. (Tr. 402.) Dr. Madden additionally opined Plaintiff was limited in reaching, handling, pushing/pulling, and feeling. *Id.* Dr. Madden assessed several environmental restrictions, noted Plaintiff's trouble with walking and balancing, and predicted that she would miss more than four days per month due to her impairments. *Id.*

The ALJ summarized and considered Dr. Madden's medical opinion, and ultimately accorded it "no weight." (Tr. 474.) The ALJ rejected the doctor's opinion on several bases: (1) it was inconsistent with Dr. Madden's other opinions; (2) it was inconsistent with her treatment notes documenting the lack of consistent MS-related symptoms; (3) the doctor's examination notes did not reveal significant findings; (4) the record did not reflect treatment for MS since 2011; (5) the doctor's opinion did not explain its objective basis; (6) the opinion was inconsistent with other medical evidence of record, including mild imaging findings, physical examination showing normal gait, no difficulty in transfers, and normal neurological examinations; and (7) limited and conservative treatment overall. *Id.*

Plaintiff maintains that none of the reasons set forth by the ALJ met the applicable "specific-and-legitimate" standard for rejecting medical opinions. Pl.'s Br. 7. In support, Plaintiff provides two brief paragraphs asserting that her medical records support Dr. Madden's opinion by contemporaneously documenting weakness and spasticity; subjective complaints supporting the doctor's assessed limitations on standing, walking, and sitting; and objective findings substantiating Plaintiff's pain complaints. *Id.* Plaintiff concludes that "treatment notes, as well as the overall medical record, support Dr. Madden's opinion and show consistent complaints by [Plaintiff]."

OPINION AND ORDER – 7

Plaintiff's assertions are not persuasive. Although treatment notes throughout the record reference degrees of weakness and spasticity during physical examinations, the treatment providers of record predominantly indicated that those symptoms were mild. (*See* Tr. 290 ("little bit" of numbness and weakness), 321-24 (mild low back pain, 5/5 strength bilateral leg strength, full range of motion ("ROM")), 326 (mild and subjective weakness, 5/5 strength bilateral legs), 381 (subjective weakness, "patient denies numbness, tingling, weakness in lower extremities"), 388-89 (mild increase in spastic tone, 5/5 muscle strength except 3/5 spreading toes on the left, "subtle" symptoms in the left leg), 426-28 (no MS symptoms, moderate increase in spastic tone, 5/5 muscle strength except 3/5 spreading toes on the left and 4/5 left dorsiflexion), 433 (shoulder weakness, recommendation to continue conservative treatment), 439 (mild shoulder weakness, recommendation to continue conservative treatment), 454 (straight leg raise pain and weakness although "distraction decreases some of pain"), 456 (some glut weakness), 655 (some left leg spasticity, 3/5 strength in left leg, 5/5 in right), 658 (second episode of left leg weakness), 670 (negative for back pain, weakness, and numbness), 678-79 (negative for arthralgias and myalgias, normal strength and gait), 683 (moderate left leg spasticity, muscle strength 5/5, some back pain with straight leg test).) Indeed, Dr. Madden repeatedly indicated that Plaintiff's MS was clinically "mild" and "stable." (Tr. 388-89, 427-28, 474, 683.).)

As such, the examination findings of record are generally inconsistent with the extreme functional limitations assessed in Dr. Madden's July 2014 opinion, including restrictions in standing, walking, and sitting less than two hours in an eight-hour workday, having to lie down four times during a workday, and missing more than four days per month due to her impairments. (*See* Tr. 401-02.) Inconsistency between a treating physician's opinion and her treatment notes is a specific-and-legitimate reason for rejecting such an opinion. *Tommasetti v. Astrue*, 533 F.3d

OPINION AND ORDER – 8

1035, 1041 (9th Cir. 2008); *see also Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (ALJ may discount medical opinion where treatment notes "indicate only moderate symptoms" but the "opinion describes severe symptoms."). Although some of the medical examinations noted above indicated "moderate" or "significant" findings, it is the duty of the ALJ, not a reviewing court, to resolve ambiguities in the medical record. *Magallanes,* 881 F.2d at 750. Based on the findings recited *supra*, the Court is convinced that the ALJ's finding was sufficiently supported by substantial evidence to affirm the ALJ's factual determination. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that the substantial evidence standard is a low bar). Moreover, even if evidence existed to support more than one rational interpretation of the medical record, the Court must defer to the ALJ's reasonable interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Here, the ALJ properly considered Dr. Madden's opinion and found that her "examination notes do not reveal significant weakness, instability, more than mild-to-moderate spasticity, persistently abnormal gait, or evidence of balance problems." (Tr. 474.) Because the finding was supported by substantial evidence and met the specific-and-legitimate citations to the record, the ALJ did not err.

Plaintiff argues that the ALJ's rejection of Dr. Madden's opinion was inconsistent with the objective evidence of record. Specifically, Plaintiff contends that medical imaging and chart notes supported the existence of pain arising from DDD, annular fissures, facet arthropathy, spondylosis, leg-length discrepancy. The ALJ, however, thoroughly assessed the objective medical evidence of record, including lumbar spine x-rays in 2012 and an MRI in 2013. (Tr. 299, 471-72.) As the ALJ noted, the 2012 x-rays showed only "mild" disc space narrowing at L4-L5, and "very mild" spondylotic changes at L1-L2 and L4-L5. (Tr. 299, 471.) The 2013 MRI revealed small focal protrusions and mild facet arthropathy at L3-4, L4-5, and L5-S1 without central canal or

OPINION AND ORDER – 9

neuroforaminal stenosis. (Tr. 329, 471.) The ALJ noted that a provider who later reviewed the 2013 MRI results characterized Plaintiff's DDD as "mild." (Tr. 374, 471). The ALJ also noted that a subsequent MRI in September 2016 showed no significant change from the 2013 imaging. (Tr. 472, 664-65.)

Further, the ALJ determined Plaintiff's clinical examinations of record did not reflect "significant weakness, instability, more than mild-to-moderate spasticity, persistently abnormal gait, or evidence of balance problems." (Tr. 474.) For example, the ALJ explained that although Plaintiff alleged a disability onset date of August 15, 2011, she did not seek treatment for any impairment until February 2013, when she had mildly decreased lumbar flexion and mild pain with extension. (Tr. 321, 472.) The ALJ determined that although Plaintiff had two examinations with positive straight leg tests in 2013, it was unclear whether the tests elicited back or radicular symptoms, and that subsequent straight-leg tests were negative for radicular symptoms. (Tr. 333, 360, 381, 472.) The ALJ additionally considered Plaintiff's leg-length discrepancy but found that the medical record reflected "normal gait and station, no difficulty with transfers, and normal neurological examinations with 5/5 strength." (Tr. 298-99, 333, 360, 374, 381, 388, 414, 472, 474.) The ALJ acknowledged that Plaintiff walked with a limp in July 2014, but she had just sprained her left ankle. (426-27, 472.)

As the ALJ explained, Dr. Madden felt that Plaintiff's limitations were based on findings of spasticity, left-sided weakness, instability, and difficulty walking and balancing. (Tr. 401-02, 474.) Based on the evidence recounted above, however, the ALJ did not err in determining Dr. Madden's extreme limitations were not supported by her own treatment notes, the treatment notes of other providers, or the objective medical evidence of record. (Tr. 474-75.)

/ / / / /

OPINION AND ORDER – 10

The ALJ additionally rejected the extreme limitations assessed by Dr. Madden by considering Plaintiff's "limited and conservative treatment with no regular treatment for MS and surgery contraindicated for her back pain." Tr. 474-75. For instance, on July 13, 2014, Dr. Madden indicated that Plaintiff "had not been on treatment for a few years." (Tr. 426.) A different provider, Vivek R. Deshmukh, M.D., reviewed Plaintiff's 2013 MRI but felt that "there is nothing surgical on the MRI[.]" (Tr. 371, 475.) He saw "no evidence of central or foraminal canal stenosis and no evidence of instability." *Id.* Plaintiff's conservative treatment included physical therapy in February and March of 2013. (Tr. 447-58.) Plaintiff took a corticosteroid the following month, and then an epidural steroid injection in August 2013, which reportedly improved her pain significantly. (Tr. 325, 328, 332, 472.) As the ALJ noted, Plaintiff was encouraged to exercise and engage in a healthy lifestyle rather than pursue more aggressive treatment measures. (Tr. 291, 332-33, 472.) The Court notes that Plaintiff does not assign error to the ALJ's finding that her course of conservative treatment is inconsistent with Dr. Madden's extreme limitations.

Plaintiff argues that the ALJ erred to the extent he accorded more weight to the non-examining state-agency medical reviewer opinions than that of Dr. Madden. In support, she asserts that "DDS consulting opinions are insufficient to reject Dr. Madden's opinion[.]" Pl.'s Reply at 1. Plaintiff contends that the DDS opinions were made without the benefit of the full medical record, that they never examined Plaintiff in person, and that a non-examining doctor's opinion, by itself, is not substantial evidence to reject a treating physician. *Id.* at 2. Plaintiff's argument is unavailing. First, the ALJ did not reject Dr. Madden's opinion on the basis that it was contradicted by the reviewing doctors' opinions, which undermines Plaintiff's premise. Indeed, as discussed above, the ALJ's rejection of Dr. Madden's opinion was based on its inconsistency with her own treatment notes, the notes of other providers of record, objective medical evidence including

imaging and examination findings, and Plaintiff's conservative treatment record, all of which were proper rationales. (Tr. 474-75.) Next, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Such was the case with Dr. Madden's opinion, for the reasons described herein. Last, the ALJ was aware that the reviewing doctors did not evaluate all of the medical records, and thus accorded their opinions only partial weight. (Tr. 474.)

Finally, Plaintiff asserts that the ALJ improperly rejected Dr. Madden's opinion despite its consistency with her own subjective symptom reports. However, the ALJ determined that "the supplied nonmedical evidence also fails to support [Plaintiff's] allegation that she is incapable of all work activity, and suggests that her functional limitations are not as significant and limiting as alleged." (Tr. 473.) On review, Plaintiff does not assert that the ALJ erred in assessing her subjective symptom allegations, nor does Plaintiff assert that the ALJ erred in assessing the third-party lay witness evidence supplied in support of Plaintiff's disability application. As such, the Court declines to address whether such subjective symptom testimony was consistent with Dr. Madden's opinion. Moreover, the ALJ did not reject Dr. Madden's opinion to the extent it was based on Plaintiff's subjective symptom reports. Rather, as discussed herein, the ALJ appropriately considered Dr. Madden's opinion and provided specific-and-legitimate rationales, supported by substantial evidence, to properly reject her assessment.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

OPINION AND ORDER – 12

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED, and this case is DISMISSED.

DATED this 27TH day of May, 2020.

_____
John V. Acosta
United States Magistrate Judge

OPINION AND ORDER – 13